UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BONNIE M. TUCKER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | CAUSE NO. 1:08-cv-674-WTL-TAB |

**ENTRY ON JUDICIAL REVIEW**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Bonnie M. Tucker seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

**PROCEDURAL HISTORY**

Tucker filed her application in April 2003 alleging disability beginning on March 16, 2003, due to neurofibromatosis, major depressive disorder, anxiety disorder, and borderline intellectual functioning. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an ALJ. An initial hearing was held in December 2005, at which the ALJ and Tucker's counsel agreed that a continuance was necessary so that additional evidence could be obtained and the ALJ could schedule a psychological expert and a medical expert specializing in neurology, rather than the internist he had scheduled. A second hearing was held on March 16, 2007, at which Tucker testified. Also testifying were medical expert Dr. Karl Manders, who is a neurosurgeon, psychological expert Dr.

Jack Thomas, and a vocational expert. In a decision dated April 21, 2007, the ALJ denied Tucker's application for benefits. After the Appeals Council denied review of the ALJ's decision on July 14, 2008, Roberts filed this timely appeal.

## TUCKER'S MEDICAL HISTORY

Tucker was 32 years old when she filed her application for benefits. She attending special education classes through the tenth grade, when she dropped out of school. Her past relevant work included bakery packer, receptionist, and construction cleanup worker.

Given the nature of Tucker's arguments and the Court's resolution of them, only a general discussion of the medical evidence in the record is necessary. Tucker suffers from a genetic disorder called neurofibromatosis, which causes tumors to grow on her nerves. In October 2002, Tucker had surgery to remove a tumor that was compressing nerves in her lower back. As a result of that surgery, Tucker lost sensation in her right leg, although she retained motor control and strength in the leg. She has also consistently complained of severe lower back and right leg pain since the surgery and has been treated with various narcotic pain medications as well as with a TENS unit. In addition, Tucker has been treated for depression and anxiety with a variety of medications. Additional evidence of record is discussed as relevant below.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any

other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors.  20 C.F.R. § 404.1520(b).  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled.  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of

evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## DISCUSSION

The ALJ found at step one that Tucker had not engaged in substantial employment since her alleged onset date of March 16, 2003. At steps two and three, the ALJ concluded that Tucker had the severe impairments of neurofibromatosis, major depressive disorder, anxiety disorder, and borderline intellectual functioning, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Tucker retained the RFC to perform light work; that is, to lift and carry up to twenty pounds occasionally and up to ten pounds frequently and to sit, stand and walk up to six hours in an eight-hour work day. In addition, she was required to avoid climbing ladders, ropes, or scaffolds, and she was limited to the performance of simple and repetitive work tasks. She also was limited to occasional balancing, kneeling, crouching, crawling, and climbing ramps and stairs. The ALJ found that Tucker was unable to return to any of her past relevant work, but that considering her age, education, work experience and RFC, she was capable of performing a significant number of jobs in the national economy, including inspector/packer and machine tender, as well as the full range of sedentary unskilled work. Therefore, the ALJ determined that Tucker was not disabled.

Tucker advances several objections to the ALJ's decision, each of which is addressed, in turn, below.

### *Credibility Determination*

Tucker argues that the ALJ erred in his analysis of Tucker's complaints of pain. Tucker alleges that she experiences disabling back and leg pain. With regard to subjective symptoms such as pain, if a claimant has a medically determinable impairment that is reasonably expected to

4

produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

The ALJ found Tucker's allegation of disabling pain to be "not entirely credible." Record at 25. Because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

> The reasons for an ALJ's credibility determination must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting SSR 96-7p). Given this standard, it is clear that the ALJ in this case failed properly to articulate his reasons for finding Tucker less than fully credible.

5

The ALJ's decision contains two explicit and one implicit statement regarding Tucker's credibility.[1]  First, the ALJ states:

> After considering the evidence of record, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [sic.] her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Record. at 25.  This type of conclusory statement is insufficient to support a credibility determination.  *Brindisi*, 315 F.3d at 787.  This statement is followed by a discussion of the medical evidence of record and an explanation of the weight the ALJ gave to each physician's opinion.  During the course of that discussion, the ALJ makes the following implicit statement about Tucker's credibility:

> The claimant did testify that when she walks for prolonged periods that [sic.] she does trip over her own foot because it turns in or drops.  However, there is no evidence in the record to support this statement.  On this topic, Dr. Manders noted that repeated examinations show that the claimant has full motor strength, which he found to be a significant [sic.] regarding the claimant's functioning.  Dr. Manders' opinions are given great weight . . . because his opinions were consistent with the weight of the evidence, because of his area of medical specialty is relevant to the alleged complaint . . .. because he observed (but did not examine) the

---

[1] In his brief, the Commissioner points to support in the record for the ALJ's credibility determination beyond that expressed by the ALJ.  As in *Golembiewski v. Barnhart*, "[t]he Commissioner's response is problematic for two reasons:

> First, nothing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied. Indeed, the cases make clear that the ALJ must specify the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony.  Second, regardless of the requirements of Social Security Ruling 96-7p, general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.  So the Commissioner's effort to pinpoint parts of the ALJ's decision that support the credibility finding is unhelpful.

322 F.3d 912, 916 (7th Cir. 2003) (citations omitted).

>claimant, albeit briefly, at the hearing. Furthermore, he testified under oath and was the only medical expert who was subject to cross-examination.[2]

Record at 27. Dr. Manders did, in fact, testify that the sensory loss in Tucker's right leg was "not a functional loss"; "[i]n other words, you may have numbness but that shouldn't interfere with her motor ability to stand or walk or things of that nature." *Id.* at 514. Dr. Manders' testimony stops short of directly refuting Tucker's claim that the numbness in her leg makes it difficult for her to walk for long periods of time–a claim which, frankly, seems unsurprising to the Court. However, even if his testimony were less equivocal, as noted above the regulations prohibit the ALJ from rejecting Tucker's testimony regarding her symptoms "solely because the available objective medical evidence does not substantiate [her] statements," 20 C.F.R. § 404.1529(c)(2), as long as she has a medically determinable impairment that could reasonably be expected to produce the symptom she alleges–that is, difficulty walking for long periods of time. She clearly has such an impairment, as it is undisputed that she has nerve damage that causes her leg to be numb.

>Finally, the ALJ made the following statement:

>Evidence of record regarding the claimant's daily activities is consistent with a residual functional capacity for light work. The claimant is able to care for her personal need [sic.], perform household chores, cook, do yard work, launder, drive, shop, and care for her adolescent daughter.

Record at 29 (citation omitted). It is true that Tucker did state on the form cited by the ALJ that she performed the type of activities the ALJ recites. *Id.* at 102. However, she also stated on the

---

[2] It is troublesome to the Court that the ALJ gave more weight to Dr. Manders' testimony than that of other medical opinions simply because Dr. Manders testified under oath and was subject to cross-examination. If those were legitimate considerations, then the opinions of testifying medical experts would always be entitled to more weight than those of non-testifying, treating physicians, something that the applicable regulations do not support. Further, there is absolutely nothing in Dr. Manders' testimony that remotely suggests that he was aided in any way by his ability to observe Tucker during the hearing, and the Court would be highly suspect of such a suggestion had it been made.

form that it took her longer to perform the activities because she had to sit down and rest due to pain. *Id.* at 102-03. Thus, the form does not contradict Tucker's testimony; it is consistent with it. Presumably recognizing that fact, the ALJ adds:

> However, to the extent that she is self-limited, this does not in itself establish a medical or pathological basis for such restrictions, nor is the claimant credible in alleging an incapacity for all sustained work activity. In summary, the overall record does not reasonably corroborate the claimant's allegations of symptoms attributed to her impairments to an extent that reasonably would preclude the performance of a range of light work.

*Id.* Again, though, the ALJ provides no explanation for his finding that Tucker's testimony is not credible. The failure to do so requires remand.

### *Failure to Consider Side Effects of Medication and Complaints of Migraines*

Next, Tucker argues that the ALJ's failure to acknowledge that she suffers from migraine headaches and to consider their effect on her ability to work was error. She also argues that it was error for the ALJ to fail to consider the side effects from her pain medication and their effect on her ability to work. It is true that Tucker's medical records indicate that she has suffered from migraines; it is also true that migraines can be disabling if they are severe and frequent enough. However, an ALJ is not required to cull through the medical records and discuss every ailment from which a claimant has ever suffered. Rather, the presumption is that claimants represented by counsel "have made their best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). No mention was made at the hearing regarding Tucker's headaches, and Tucker points to nothing in her records that indicates that her headaches cause or contribute to her inability to work. Therefore, the ALJ was not required to discuss the fact that she has, at times, been treated for migraine headaches in his decision.

Similarly, Tucker's only testimony regarding the side effects of her pain medication[3] was the simple statement that they make her feel "tired."[4]  Tucker's counsel had the opportunity to ask Tucker to expand upon this statement, but he failed to do so.  The bare statement that pain medication makes her feel "tired," in the absence of any evidence that would suggest that this tiredness was such that it would impact her ability to work, simply was not sufficient to obligate the ALJ to consider the side effects from medication in arriving at his RFC.

## *Mental Impairment*

Tucker next argues that the ALJ erred in the manner in which he evaluated her mental impairments.  The ALJ determined that Tucker had the severe mental impairments of major depressive disorder, anxiety disorder, and borderline intellectual functioning.  The ALJ utilized a psychological expert at the hearing, Dr. Jack Thomas, who examined and discussed the evidence of record regarding Tucker's mental condition at length and opined that Tucker was able to perform simple and repetitive tasks in spite of her mental impairments.  While Tucker points to evidence in the record that suggests that her psychological condition is more severe than that, there is also evidence in the record, discussed by Dr. Thomas, that supports his conclusion.  For the most part, Tucker's argument amounts to nothing more than an invitation for the Court to reweigh the evidence, which it is not permitted to do.  *Overman*, 546 F.3d at 462 ("We view the

---

[3] Actually, Tucker's counsel asked her about the effects of morphine and hydrocodone, medications that she was no longer taking at the time of the hearing.  There is no evidence of record regarding any side effects Tucker experienced from Vicodin, which is the pain medication she was taking at the time of the hearing.

[4] As Tucker points out in her brief, she also mentioned on a form in April 2003 that the drug "Trisidone" [which presumably refers to Trazadone] had the side effect of making her sleepy; on the same form she stated that she experienced no side effects from Vicodin.  Record at 114.

record as a whole but do not reweigh the evidence or substitute our judgment for that of the ALJ.").

Tucker also argues that the ALJ erred because he failed to order IQ testing after saying that he would do so during the initial hearing. However, Dr. Thomas testified that Tucker's scores on specific portions of an MMPI test she took demonstrated that she could read and comprehend questions at an eighth grade level, which he testified was "at the low end of the average range." Record at 528. Given this information, and the fact that the ALJ's RFC finding limits Tucker to simple and repetitive tasks, it is unclear to the Court what additional IQ testing would add to the record. Therefore, while Tucker is free to argue to the ALJ on remand that such testing would be useful, the Court will not order that such testing be conducted by the Commissioner based upon the record as it now stands.

### *Mishandling of RFC Evaluation*

Tucker next makes several arguments regarding the ALJ's RFC determination. First, she argues that:

> The denial elects to refuse to incorporate into its functional assessment any of the observations contained in the medical source RFC or to grapple with the substance of the functional assessment. Instead, the ALJ opts to rely on an RFC from a review of the record conducted in August 2003. The problem is, this RFC was completed on a less than complete record. On the final page of the RFC, the reviewing doctor checks the box that indicates there was no treating or examining source statement regarding the claimant's physical capacities enclosed in the file. (R. at 135). The written denial's reasons for eliminating consideration of the RFC's observations are findings, observations, and limitations are outside the mandates of the law and regulations.

Tucker Brief at 18. The ALJ did note the August 2003 RFC referred to by Tucker; however, his RFC was also based upon and supported by the testimony of the medical expert, Dr. Manders, which the ALJ found to be consistent with Tucker's treating neurologist and therefore "in the

10

absence of substantial evidence to the contrary, . . . considered to be a reliable and credible assessment of the claimant's residual functional capacity." Record at 27.

Next, Tucker objects to the ALJ's treatment of the mental RFC opinion of Louise L. McMillan, LCSW. The ALJ stated the following:

> Louise L. McMillan, LCSW, completed a mental residual functional capacity on July 25, 2005. Ms. McMillan opined that the claimant is not able to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, or perform at a consistent pace without an unreasonable number of rest periods. Ms. McMillan did not provide the basis for her findings and the record contains no evidence regarding her treatment relationship with the claimant or any treatment notes. This individual is also not a recognized medical source,[5] and her opinions are largely conclusory, are voiced on issues reserved to the Commissioner,[6] and are not consistent with the overall evidence of record. For these reasons, her opinion is given little to no weight.

Record at 28. Tucker asserts that Ms. McMillan was part of Tucker's treatment team at Midtown Mental Health Services and therefore her opinions are those of a treating source. The ALJ was correct when he stated that the record did not contain any evidence of a treating relationship or any explanation of what Ms. McMillan's opinions were based upon. If such evidence exists,

---

[5]To the extent that Tucker argues that it was inappropriate for the ALJ to consider the fact that Ms. McMillan was not an "acceptable medical source" in determining how much weight to give her opinion, she is incorrect. *See* SSR 06-03p (2006) ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'").

[6]The import of this statement is not clear to the Court. If what the ALJ means is that he is not bound by any particular RFC determination in the record because that issue ultimately is reserved to the Commissioner, that is correct. *See* 20 C.F.R. § 404.1527 (e)(2). However, it is entirely appropriate for medical sources, both treating and consultative, to opine regarding a claimant's RFC, and those opinions must be considered by the Commissioner in arriving at an RFC. *Id.* In this case, the Court believes that the ALJ properly explained his reasons for not giving Ms. McMillan's opinion much, if any, weight; however, on remand the ALJ should refrain from suggesting that an RFC opinion is not entitled to consideration simply because it is an RFC opinion.

Tucker should bring it to the ALJ's attention on remand so that the ALJ can consider her opinion in the correct context.

### *Consideration of Impairments in Combination*

Finally, Tucker argues that the ALJ erred in failing to articulate the combined effects of each of her impairments. However, Tucker fails herself to articulate how her impairments combine to limit her ability to work more than they do when examined individually. Further, the ALJ states in his decision that Tucker does not have "an impairment or combination of impairments that meets or medically equals an impairment," Record at 22, indicating that he understood his obligation to consideration Tucker's impairments in the aggregate. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("Nonetheless, the ALJ in fact did consider Mr. Getch's health problems in the aggregate, ruling that his impairments were not severe enough, 'either singly or in combination,' to equal one of the listed impairments."). In the absence of any suggestion from Tucker that a more thorough consideration of her impairments in combination could have led to a different result, the Court finds no error.

### **CONCLUSION**

For the reasons discussed at length above, this case is **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED:   09/22/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification